No. 2754

Second Circuit

———

**SEGRIST v. INTERURBAN TRANSPORTATION CO., LTD.**

———

(January 28, 1927. Opinion and Decree,)

———

(*Syllabus by the Court*)

1. **Louisiana Digest—Carriers of Passengers and Goods—Par. 15.**

Where a passenger of a public carrier by motor bus on his own initiative got out of the bus and onto the rear of of the floor of a Ford motor truck belonging to a third person employed by the carrier to tow its disabled bus to a nearby filling station, he thereby ceased to be a passenger of the public carrier by motor bus.

Reary vs. Railroad Co., 40 La. Ann. 32, 3 So. 390.

2. **Louisiana Digest—Automobiles—Par. 7; Carriers of Passengers and Goods— Par. 52.**

Where a person gets upon the rear floor of a Ford motor truck not intended for the carrying of passengers without the knowledge or consent of the driver of the truck and falls therefrom and is injured, his injury is the result of his own negligence which is the proximate cause thereof and bars him from recovering damages therefor.

McCoy vs. Railroad Company, 136 La. 987, 68 So. 100.

Hogg vs. Railroad Company, 139 La. 972, 72 So. 705.

Appeal from the Ninth Judicial District Court of Louisiana, Parish of Orleans. Hon. Leven L. Hooe, Judge.

Action by C. P. Segrist against Interurban Transportation Company, Ltd.

There was judgment for defendant, and plaintiff appealed.

Judgment affirmed.

Lamar Polk, B. T. Dawkins, of Alexandria, attorneys for plaintiff, appellant.

Hawthorn & Stafford, of Alexandria, attorneys for defendant, appellee.

STATEMENT OF THE CASE.

REYNOLDS, J.    Plaintiff was a passenger for hire on a motor bus operated by defendant between Monroe and Alexandria.

Approximately one hundred and fifty yards from a filling station at Pollock, Louisiana, the bus stalled, and the driver got out and walked to Pollock and employed the Scott Motor Company, Inc., of that place to send a Ford motor truck to the disabled bus and tow it into Pollock. This, the Scott Motor Company, Inc., did, but the Ford motor truck was unable to pull the bus and it was disconnected from the bus by the driver preparatory to returning with it to Pollock where he intended to get a tractor with which to pull the bus into Pollock. In the meantime the plaintiff, without the knowledge or permission of the driver of the Ford motor truck, had placed his baggage on the Ford truck and taken a seat on the floor of the truck at its rear end. When nearing the filling station at Pollock the Ford truck turned to the left and plaintiff fell off of it and was seriously injured.

Plaintiff contends that he was given permission by one of the two persons in charge of the truck to ride on it into Pollock. Each of these persons swears positively that he did not do so.

Plaintiff has sued the Interurban Transportation Company, Inc., for damages, al-

leging that he received his injuries while its passenger.

Defendant denied liability on the ground that when plaintiff fell off the truck he was no longer its passenger and had ceased to be under its care and protection, and alleged that plaintiff's own negligence was the sole cause of his injuries and that this negligence barred him of the right to recover damages.

On these issues the case was tried and there was judgment in favor of defendant and plaintiff appealed.

## OPINION.

We will take up the questions in dispute in reverse order.

First, was plaintiff guilty of negligence?

At the time he got upon the floor of the Ford truck it was cloudy and beginning to rain. He is by trade a compositor and was employed by the Rapides Printing Company, and is not shown to have been an expert in riding in the dangerous position of sitting on the floor of a Ford truck at the rear end.

He testifies that one of the two persons in charge of the truck told him he might ride into Pollock on it, but each of these persons swore positively to the contrary.

Hence it follows that plaintiff's testimony on this point is offset by that of the persons in charge of the truck and that nothing has been proved.

Besides, the burden of proof rested upon the plaintiff.

But even if it be conceded that one of the two persons in charge of the Ford truck did tell plaintiff he might ride into Pollock on the truck, that by no means gave him the right to get upon the floor of the truck at the rear end, a place not equipped for the carrying of passengers or safe to ride on, when there was on the truck a cab with a comfortable and safe seat for two persons and only one person, the driver, sat on the seat when the truck went back to Pollock.

If either of the persons in charge of the truck had given plaintiff permission to ride back to Pollock on it such permission could only have been for him to ride on the safe and comfortable seat in the cab of the truck prepared for the safety and comfort of those whose duties required them to ride on the truck.

R. K. Bryan testified, page 77:

"Q. I believe you have stated that there was a cab to the truck?
"A. Yes, sir.
"Q. How many could sit in that?
"A. Three can sit comfortably in that.
"Q. You did not have any one up in the cab with you?
"A. No, sir.
"Q. And if you have been going to invite any one you would have asked them or invited them when you were in the cab?
"A. Yes, sir.
"Q. And as a matter of fact, you did not know anything about anybody being on the truck at all?
"A. That's right."

Mr. Bryan was one of the two persons in charge of the motor truck, the other being Mr. Z. C. Tucker. They came down together on the truck to the bus from Pollock but when the truck went back to Pollock to get a tractor Mr. Tucker did not return with him and Mr. Bryan was alone on the seat in the cab of the truck.

Mr. Bryan further testified, pages 61, 62:

"Q. Mr. Bryan, when you started back to the garage—I believe you have stated that you were driving?
"A. Yes, sir.

"Q.  Was any one in the cab with you?
"A.  No, sir.
"Q.  Was there any one, as far as you know, on the truck?
"A.  No, sir.
"Q.  You have heard Mr. Segrist testify that either you or Mr. Tucker invited him to go up to Pollock on the truck?
"A.  Yes, sir.
"Q.  What have you to say as to whether or not you extended such an invitation?
"A.  I did not do it.

* * *

"Q.  Now, Mr. Bryan, I believe you say that you did not invite Mr. Segrist to come on the bus?
"A.  I did not.
"Q.  Are you positive of that?
"A.  Yes, sir.
"Q.  Well, did you invite any other passenger to do that?
"A.  No, sir.
"Q.  Was there any general invitation extended• to any of the passengers by you or by Mr. Tucker in your presence?
"A.  No, sir.

* * *

"Q.  He (meaning plaintiff) might have said something about getting on the truck and you might have forgotten it?
"A.  If he did, I did not answer him.
"Q.  He might have told you that he was going to get on the truck and come to Pollock with you?
"A.  I did not hear him.
"Q.  Do you recall anything that he said to you?
"A.  No, sir.
"Q.  He might have said that, but you don't recall it?
"A.  He might have said it but I did not hear it.
"Q.  Would you deny that he said it?
"A.  No, sir; but I deny that I heard him say it.
"Q.  You deny that you heard Mr. Segrist say to you anything with reference to getting on the truck or any of the other passengers, say anything to you about riding on the truck?  You deny that?
"A.  Yes, sir; I deny that.

* * *

"Q.  Didn't you have some men on the truck who came from Selma to Pollock?  Where they worked?

"A.  No, sir.
"Q.  Were they friends of yours?
"A.  No, sir; there wasn't anybody on there that I knew; if there was anybody on there that I knew I did not know about it.
"Q.  You say that there were no friends of yours on there?
"A.  There were no friends of mine on there, and I did not know that there was any one on there."
Mr. Z. C. Tucker testified, page 38:
"Q.  Did you hear Mr. Segrist testify this morning about either you or Mr. Bryan inviting him to go on the truck?
"A.  Yes, sir.
"Q.  You heard him, did you?  What have you to say with · reference to that, as to whether or not you did that?
"A.  Well, I didn't.
"Q.  Now, what have you to say as to whether or not Mr. Bryan did, in your presence or hearing?
"A.  He did not in my presence."

This evidence convinces us that plaintiff got upon the Ford truck on his own initiative and without the permission or knowledge of either of the persons in charge of the truck.

Besides this, there is no evidence tending to show that the driver of the truck was negligent in driving it.

T. D. Prestridge testified, page 79:

"Q.  On what part of the truck was he? (Meaning plaintiff.)
"A.  On the corner of the bed, with his feet hanging—on the corner of the bed behind the cab, with his feet hanging; and when the truck slowed up and turned this curb, this gentleman (indicating Mr. Segrist) fell off."

Mr. Bryan, who was driving the truck from which the plaintiff fell, testified, page 63:

"Q.  Did you have occasion, during that drive, to make any sudden turn of the truck?
"A.  No more than just to turn off the highway."

Under all the evidence we are convinced that plaintiff was guilty of recklessness in getting onto the Ford truck on his own initiative and without the knowledge or permission of the driver and that he fell off the truck because of his own inexperience in riding sitting on the floor of the truck in such a precarious position.

The evidence further convinces us that the truck was not being driven negligently when plaintiff fell off of it.

On the question as to whether or not the plaintiff, at the time he fell off of the truck, was still a passenger of the Interurban Transportation Company, Inc.

When the bus stalled, plaintiff got out and left it.

He testified, pages 4, 5, 6, 7 and 8:

"Q. Well, in other words, he got it about three-quarters the way up the hill, just outside of Pollock, when the bus stopped?

"A. Yes, sir.

"Q. What happened then? Did he put on his brake to hold it at that point, or did he back down to the bottom?

"A. The bus stopped, and I think that he applied his emergency brake, and got out of the car and slammed the door and walked up the road toward Pollock.

"Q. Did he attempt to work on the motor or attempt to get it started after it stalled on that occasion?

"A. He did not.

"Q. What, if anything, did the operator or driver of the car say to you and to the other passengers when he left and started in the direction of Pollock?

"A. He did not say a word.

"Q. Did he make any explanation at all?

"A. None at all.

"Q. Now, what time was that, approximately?

"A. Well, about 7:30.

"Q. In the morning or evening?

"A. Evening.

\* \* \*

"Q. What was the next thing that happened after the driver, or operator of the bus left the bus, and you and the other passengers were parked in the highway three-quarters of the way up hill?

"A. Well, the passengers—we all got out of the bus and were standing on the side of the road, and about half-way, or maybe a little less, a truck with two men came down, and they came down and turned around and backed up to the bus and tied a chain around it, and one of them got on the bus and attempted to start it, but he could not start it, and about that time it was dark and we could not see anybody's face plain, so I got on the front seat.

"Q. Of what?

"A. The bus.

"Q. Well, go ahead?

"A. And the bus had no lights, and he was trying to find the buttons of the bus to put the motor on, and I had some matches and I got up there and struck some matches, and by being on the front seat and watching the operation of the driver, I knew where the buttons were and I pointed them out to him, but he could not start the bus, and we got out and all the passengers got a hold of the bus, and the truck pulled the bus about five or six feet, and then the other man, they exchanged drivers, with the truck, and he tried to pull it but he could not pull it, and then one of the other men got into the bus and he tried to start it, but he could not do it.

"Q. Now, Mr. Segrist, how many men were on this truck that came down to your assistance from Pollock?

"A. Two.

"Q. Did the driver or operator of this bus return with these two men?

"A. He did not.

"Q. Well, as a matter of fact, did the driver or operator of defendant's bus come back to the bus at all while you were there?

"A. No, sir.

"Q. After these two men on the Ford truck failed to move the bus, what happened?

"A. Well, I don't know; maybe they tried; each one of them tried it each time maybe to start the bus, but by being on the front seat there, I talked with both of them quite a bit, that is, in trying to start the bus; and after they could not

start it, I said something about wanting to get to Pollock, and one of them—I don't know which one—as I don't know either of the drivers, I could not point out either one of them now, but one of them told me. after I mentioned about wanting to get home, or to some place from where I could get home, he said that I could ride up with him.

* * *

"Q. Now, Mr. Segrist, what was the next thing that happened or that occurred?

"A. Well, after he said that, there were cars passing there all the time and there was a good deal of confusion, and a good many of the passengers were out in the back of the bus getting their grips out of it—they did not know what they were going to do, so I went back to the back and got a grip and brought it up and put in on the truck and got upon the back of the truck, and when I got up there, there was at least one or two other passengers already on the truck.

"Q. Then, as I understand you, some of the other passengers and you got your grips and climbed on the truck?

"A. Yes, sir.

"Q. Why did you get in the truck, Mr. Segrist?

"A. Well, the principal reason was because one of the drivers told me I could ride with him; it was beginning to rain and thundering and lightning heavy, and I didn't want to be left down there in the bus in the dark without any lights.

* * *

"Q. When you got in the truck—were there seats in this truck?

"A. No, sir; it was just—it looked like, as well as I could tell, a kind of home-made flat, just a flat platform on the back of the truck."

Both of the men who came down to the bus in the Ford truck denied that either one of them had given plaintiff permission to ride on the truck; but in any event the evidence conclusively shows that the truck on which plaintiff was riding and from which he fell was not the property of the defendant Interurban Transportation Company, Inc., nor was it under the management or control of any of its employees.

Mr. Tucker further testified, pages 36 and 46:

"Q. What did Mr. Phine Delia tell you and Mr. Bryan that night when he came into your shop at Pollock?

"A. He told Mr. Bryan, and I heard the conversation, as I was standing near, he told us that the bus had broken down and to get a truck and go down and see if we could pull it in, and in the meantime that he would call up and try to get a bus mechanic out of Alexandria.

"Q. Now, after he made this request of you, you and Mr. Bryan got this Ford truck and went down to the bus. That is correct, is it not?

"A. Yes, sir.

"Q. Did Mr. Phine Delia accompany you and Mr. Bryan down to the bus?

"A. No, sir; he stayed at the garage.

"Q. During the time that you and Mr. Bryan were working on the bus, in an effort to get it into Pollock, did Mr. Delia come down there at all?

"A. No, sir; I did not see him.

* * *

"Q. Mr. Tucker, as I understand it, the Pollock Motor Company keeps that truck on hand there to go down and pull the pople into the garage whenever a truck is stalled?

"A. Yes, sir."

Mr. Bryan testified, page 60:

"Q. How came you to go down there?

"A. This young man over here came up and asked me, asked us to come down.

"Q. Mr. Delia, the bus driver?

"A. Yes, sir.

"Q. What did you do when he requested you to do that?

"A. We went back, got our truck and went on down.

* * *

"Q. Is that something that the Scott Motor Company frequently does, bringing in people who are stalled?

"A. That's my business; I attend to that end of the business; anything that has to be pulled in, or any repair work of any kind to be done in the shop.

"Q. You did for the Interurban Transportation Company what you would have done for any one else under the same circumstances?

"A. Yes, sir."

Mr. Phine Delia, driver of the bus that was stalled, testified, page 99:

"Q. When the bus stalled, what did you do?

"A. I opened the door—I knew about what was the matter—and I opened the door and said to the passengers 'I'll go up here and call up another bus'; and in the meantime, while this rain was coming, I said something to one of the Pollock Motor Company's employees, if he had anything to pull the bus with, that the rain was coming, and I was on the telephone talking to Mr. Walker, and these fellows went down and tried to pull the bus, but they could not and coming back I heard that they had run over someone.

\* \* \*

"Q. Now, who was it that took the truck and went down to where the bus was?

"A. I didn't know who left. I talked to Mr. Bryan and I learned afterwards that Mr. Bryan and Mr. Tucker went down. I was to go with them myself, but they went on their own hook to bring it in while I was telephoning.

\* \* \*

"Q. So, then, as I understand your direct testimony, you got out of the bus and walked to Pollock, and after you got to Pollock you asked Mr. Bryan to go down and see if he could tow it in?

"A. I said to Mr. Bryan: 'Have you anything that you can pull a bus in with?' and he said: 'Yes, I have a ton truck here, we will go down together and get it up here.' In the meantime while I was trying to get Mr. Walker, or someone at the bus station, they went down and tried to pull it in—Mr. Bryan and Mr. Tucker—I learned afterwards."

From all the evidence it is clear that just prior to the accident in which he was injured plaintiff was riding on a Ford truck belonging to the Scott Motor Company, Inc., and that it was being driven by and was under the control of an employee of that company and that at the time the Scott Motor Company, Inc., was performing a part of its regular duties to the public, having tried and failed to tow defendant's bus from where it was stalled into the town of Pollock, and that the Scott Motor Company, Inc., had been employed to tow defendant's bus into Pollock and not to transport defendant's passengers.

It therefore follows that plaintiff, at the time of the accident to him, had, of his own accord, left defendant's bus and taken passage on a truck of the Scott Motor Company, Inc., without the knowledge or permission of the driver of the truck and without the knowledge or permission of the driver of defendant's bus.

And it is therefore clear that plaintiff cannot hold defendant liable for injuries received by him in an accident at a time when he was not its passenger, nor under its protection or care.

Plaintiff's counsel in an able and exhaustive brief has reviewed the authorities touching the liability of a public carrier to its passengers; but having found that at the time of the accident to plaintiff, plaintiff was not a passenger of or under the care or protection of defendant the authorities cited have no application in this case.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed.